Good morning, Your Honor. May it please the Court, Eric Lempel on behalf of the Pellengold of Welch in what is a relatively simple case regarding equitable tolling. We're here today to discuss whether the equitable tolling doctor should apply to Olga Welch's good faith efforts in pursuing her employment case against the respondent Edison. Why are we even getting to equitable tolling? Well, the... We were getting there because there were late filings. Correct. You were the lawyer. Correct. Had you ever heard of this enclave doctor before? I never have, and neither... Had you researched it? We researched it once we got the demur. Once you got the demur. Yeah. But you advertise your firm as being very thorough and aggressive and impressive, huh? You get big verdicts and great results. It didn't happen here. Well, no, but we didn't know what federal enclave was at the time we... You say you do all this research, and did you ever take federal courts in law school? Yes. Did you? I don't recall. I don't recall that. Well, I mean, that's a tricky thing, the federal enclave. I think... I can't remember it coming up in a case before. It goes way back. Of course, I know that if something happens on federal property at the VA or Camp Pendleton or... Here. Or the subbase or, well, here maybe, that it has to go to federal court, and that's what they call a federal enclave. Well, we did research whether Edison was our initial concern. Was it a publicly traded company? Was it partially California-owned? We did do some due diligence in trying to ascertain. We went to their website. We did research. Nowhere did we uncover that the plant in San Onofre was part of a federal enclave, a little car down... Is Mrs. Welsh, is she getting any disability payment? Yes. Who is she getting them from? From Edison and from the state. From Edison and from the state. How much is she getting? It's substantially less than what her pay would be. What? Substantially less than what her pay was when she was working. So she's still out on disability at the present time and still an employee of Edison. But she is getting disability from Edison. Yes, sir. But as to your point, yes, Welsh and the attorney did not file within the 90-day Title VII time period. That's true. However, that requirement is not jurisdictional. It can be waived and it can be equitably told depending upon the application of the three-pronged test. I suggest that every answer to whether Olga Welsh's efforts, however inartful her attorney may have been in not understanding federal enclave, certainly presented notice. You're not understanding federal enclave. I'm sorry, Your Honor? You're not understanding federal enclave, not Mrs. Welsh. Well, neither of us knew it at the time. That's right. So the question, was Edison put on notice by her filing the EEOC and the Department of Fair Housing complaints? Of course. They admit in their brief that they clearly answered the charges in the initial EEOC filing. So they were on notice of the first claim. They were not prejudiced. They don't even make an argument in their brief that they were prejudiced in any fashion. Counsel, how soon after you finally did become aware of this federal enclave issue in this case did you file your Title VII claims? Well, we attempted to argue around the application of the federal enclave prohibition and argue. How long after you were put on notice there might be a problem with this federal enclave issue? How long after that event did you file the Title VII claim? I believe it was 10 months after the state court claim was dismissed. Why didn't you immediately file a Title VII claim? Well, again, we were going through the process of trying to argue that the federal enclave didn't apply because some of the actions took place in a non-federal enclave part of the company, which is located in Los Angeles, which is why we filed there. So we weren't successful in arguing that. She was employed in Los Angeles for some period of time. That's not a federal enclave. The claims could have proceeded without that rule. She was at San Onofre for some period of time. It seemed clear to me at some point that that rule would apply and her claims would be barred, or her state court claims would be barred, so we filed that. The thing is, there's no prejudice. There's absolute notice. So the question is, is the inartful filing, like the plaintiffs in Sloan, Venezuela, and Cervantes, do her actions rise to the level of those plaintiffs in those cases? And I think that if you look at the first two prongs, they clearly do. How much time did she spend in Los Angeles? She was a 27-year employee, and I think a decade was spent as a clerical worker in Baldwin Park, and so that period of time wouldn't be covered. So she started in 82, transferred in 2000 time period. I think she was in one other location other than San Onofre as well as Baldwin Park, but transferred then to San Onofre in the 2000 time period, and then had the problems in 2003 through 2006 with the manager that she filed the EEOC and Department of Fair Housing complaints against. Well, she was complaining about the disability that she had in her hand and her neck and the failure to accommodate her. Yes. Did she have the same physical problems at the other two locations? No. They had a very strange setup where you had to type with here and look at this monitor and look at visitors, other employees coming this way. It's a very odd, incorrect setup for her and one other worker, one older female worker her age, and the manager simply didn't give credence to their claims to fix the desk. And so it not only involved claims of a disability or a failure to accommodate, it involved claims of gender-based discrimination. Why don't you save a little time. Thank you. Good morning, Your Honors. May it please the Court. I am Wanda Dorgan representing the Southern California Edison Company, and my client is also present, represented by Bill Harn. Your Honors, what... Is this a public utility? Yes, Your Honor. It doesn't look like one. It's a little bit better than that. Your Honors, what Mr. Lampel is asking this Court to do is apply state tolling principles to a federal statute of limitation. Let me ask you a couple questions. I'm just curious. Is there a requirement under federal law that an employer such as Edison Company posts in a conspicuous place on the plant the employee's rights? Yes, Your Honor. I believe that that law came into effect some years ago. I don't know that it was necessarily in effect. Does that... Do you have a copy of that? No, I don't, Your Honor. Does that tell the employee that if they suffer a claim or an injury at that plant that they're required to file with the EOC, right? Many of those notices say that. That doesn't answer my question. Does it tell them to file with the EOC? Yes, Your Honor. It does. Tell them that. And then does it tell them that when they file a lawsuit, they have to file it in the federal court? Does it tell them that? I'm not sure if it says that, Your Honor. That's kind of important, isn't it? Well, Your Honor, as far as... I'm just asking you questions. It is important, yes, Your Honor, but... Okay. And does it tell them about the 90-day period? Well, Your Honor, if the posting doesn't say that, Ms. Welch... You don't know what the posting says. No, I don't, Your Honor. Would you... Can you get a copy of that posting? I'd like to see it. Well, Your Honor, I don't know that that requirement was in effect in 2006 when Ms. Welch filed. Well, research it and let me know and file a supplemental if you don't mind doing that.  Okay, so let me ask you this. When this lady filed her claim initially, she filed a claim with the EEOC.  She filed one with the Department of Fair Employment and Housing. Yes, Your Honor, that was dual filed, that first charge. Dual filed? Yes, Your Honor. All right, then she got a notice from the state that, VHAR, whatever they call it, that... A notice to sue letter. Right. And she was told that she had a year to file. On her state claims, yes. Well, she was told she had a year to file a claim. Now, she was also told that the federal claim had been sent for processing to the state agency, right? Yes, Your Honor. Okay, and why was that done? Because, Your Honor, at that point... We got this on claim, doctor. Why was that done? Because, Your Honor, there's a work sharing agreement that's in place between the two agencies, and but for asking for an immediate right to sue, which she did not with the first charge, it is automatically dual filed with the other agency, whether there's jurisdiction or not. I didn't know this. I've been doing this for a long time, so that surprised me. Now, when she was told that the agency could settle the matter, whatever the agency does, she was told that her Title VII claim, that she had a right to sue letter. Yes, Your Honor. She did sue. Now, who told her that? Well, Your Honor, if I may, just to clarify. Yeah. There's been a lot of discussion about that first EEOC charge as embodying Title VII claims, but, Your Honor, if you look at it closely, and it's a part of the appellate's excerpt of Record No. 7, nowhere is Title VII mentioned, only ADEA and ADA. So, Your Honor. Yeah, but those are federal claims. Those are federal claims, but they're not Title VII. Well, you know, we've got to give lawyers a little slack once in a while. And now, so who sent her the right to sue letter? The EEOC, Your Honor. And told her she had 90 days to bring a federal lawsuit. Okay, so she told her she had 90 days, and that's not disputed. Did they tell her about the Enclave Doctrine? No, Your Honor, but she was specifically told she had 90 days. I know that, but did they tell her about the Enclave Doctrine? No, Your Honor. Yeah. And when did she first learn about the Enclave Doctrine? She learned about the Enclave Doctrine when the demurrer was filed by the Southern California Editing Company. For the state law. Yes, on November 26, 2007, or thereabouts. That's when it was filed, Your Honor. Uh-huh. And she waited until September 23, 2008, almost a year later, to allege her Title VII claims. So there was really no excuse for waiting that long, and Welch offers no legitimate excuse for waiting that long. Well, what was the reason why, was there any reason why the EOC or Edison didn't advise her of the Enclave Doctrine? Well, Your Honor, at the first opportunity that it made sense. I mean, normally she could have taken that federal claim and filed it in the state court, right? If she hadn't been working at this federal enclave. She could have, Your Honor. She could have. And then while all this is going on, both claims were processed by the state agency. Is that true? Yes, Your Honor. Yeah. So there would have been nothing there to indicate to her that this shouldn't be handled like an ordinary non-enclave claim. Except, Your Honor, when SCE filed this demurrer and clearly informed her that she was dealing with a federal enclave, and so to preserve her rights, she would need to act expeditiously as the federal law and statute of limitations would require her to do. Instead, she waited almost a year. What did it say when it talked about federal enclave? The demurrer itself, Your Honor, that Sam and Nofri was part of a federal enclave and it was congressional intent that she was only limited to bringing federal claims. Okay. All right. But you could bring a federal claim in state court. Yes, Your Honor. And she could have amended her complaint in state court to allege a Title VII claim. And instead, what she did throughout the course of time was demonstrate. So you're saying she could have amended her federal claim in state court and alleged a Title VII claim? Yes, Your Honor. And that would have avoided the enclave doctrine? She could have preserved her rights by doing that. If, in fact, she claimed she had no idea that she had to move forward to allege these federal claims, then it was time for her to act. If she wanted to be in state court and allege state claims and fight the federal enclave doctrine as preventing those state claims, then she needed to wake up and preserve her rights, which she could have done by amending. And instead, she waited an entire year. Her attorney needed to wake up. Well, yeah. And, Your Honor, what he also is saying in his reply brief at page 9 is that the reason he waited so long was that he had still yet to exhaust his administrative remedies with the EEOC. So he's admitting himself in his reply that they had not exhausted as to Title VII at that point in time, or any point in time, Your Honor. So under the circumstances, it would really be an injustice to reverse the district court's opinion, finding that this claim was not filed within the 90-day time period. What's the injustice? Well, Your Honor, Edison was not on notice that it had to defend a Title VII claim in relation to having exhausted administrative remedies, or with respect to when this complaint was filed. All of these charges were filed back in 06. All of her administrative activity was in 06. She admits in her reply brief that she still had yet to exhaust as to Title VII. When did Edison's lawyers first discover this business of the enclave? When they saw the initial state complaint, they are aware that Santa Nofri is on a federal enclave. Yes, they knew all this all along, right? Yes, Your Honor. But they held back that information. Your Honor, I don't see it. Let me just ask you that. They didn't tell Mr. Temple here about the federal enclave business. Well, Your Honor, I don't believe that Edison has an obligation to... Okay, I'm not going to argue about that. They just didn't tell him. Your Honor, I believe... I want the gentleman here that represents the great Thomas Edison to be aware of some of these things. And if there isn't an indication where you tell the employees about their benefits, maybe there ought to be something in there that says, you know, we got this business about federal enclaves, so be aware. And, you know, they have that symbol for a nuclear plant. You can have something like that on there, too. Maybe a skull and crossbones, because this could be fatal. Well, Your Honor, I think we have to take into consideration, and I understand what you're saying, but I really believe... Let me tell you what our court does. If you file a matter here, we will give you, free of charge, without even asking for it, what I call a do-it-yourself appellate kit. We lay it all out for you, because a lot of attorneys don't have a lot of experience in federal court. So we're a user-friendly court, and Edison ought to be a user-friendly utility, particularly for its loyal employees and in memory of Thomas Edison. Well, Your Honor, I don't know that Olga Welch needed a how-to kit, because she went to the EEOC initially. So I don't know that Edison had an obligation to say, you know you're on a federal enclave, try to protect your federal rights, because she went to the EEOC first, Your Honor. Well, how does that help her protect her federal rights? Well, if she wanted to pursue a Title VII claim as opposed to abandoning it, as it seems that the evidence shows she did, that's the best place to start, Your Honor, at the EEOC, which is where she went. Well, she had no – how about her FEHA claim? Where is that? Well, Your Honor, it was automatically dual-filed. She didn't go to the state agency initially. It was automatically filed. What happened to that claim? Is that still alive? No, Your Honor. She lost everything. Well, now Your Honor – All those claims are gone. Right. If she had the right to preserve as to her federal claims, and chose not to do so. Well, she didn't choose anything. You know, she acted out of ignorance, or she was dealt with because of it. Well, Your Honor – All right, that's enough. Do you have any questions of me? No, I don't, Your Honor. Okay, thank you. Thank you for your argument, Mr. Stoker. Thank you. It was a good argument. Thank you. Sir, will you look into this? Absolutely, Your Honor. Aren't you there to protect the people working for you? Yes, Your Honor, we do. Isn't that their rights? Yes, Your Honor, and we do. We do. We have – all of our employees are put on notice from the day they're hired of what rights they have as employees under Title VII, under the California Fair Employment Housing Act. You give them a piece of paper – All of our employees, they all receive a document that encourages them to – Well, then mail it out to all the lawyers, would you? I'm sorry, Your Honor. Mail it to all the lawyers. I am the lawyer, Your Honor. I've processed this case in Superior Court and in District Court. But for my workload and schedule on other matters, I would have handled the appeal as well. But Ms. Gordon presented it. All right. I've got a noble job. Thank you, Your Honor. Yeah. Well, I think it's the application of gotcha law with the federal employees. They never tell. They have hundreds of cases against them. They never tell anybody. They don't tell their employees. It's not posted. It's a little-known prohibition that traps the unwary. Have you got a copy of it? I don't, but I certainly will find it as well, the one that allegedly was posted in 2006, and we'll file a supplemental brief along with counsel. That would be interesting. It will. And certainly, I am almost certain it says nothing about, you know, if you have claims, file and we're a federal enclave and blah, blah, blah. They have a hotline. They don't explain that on the hotline. Now, what's unfair or unjust is that a litigant in good faith, however inartful, would be denied her day in court. And I think that's what's unjust. Well, is the litigant excused when the lawyer should have been? I mean, is the lawyer's negligence a cause for equitable tolling? Well, it may be. It wasn't in Baldwin. That attorney didn't file a complaint at all or any type of plea, and that's why the equitable tolling wasn't applied in that case. He was out of the country. He just didn't see. He never filed anything, and that's the difference in this case. Welch filed with the EEOC. She put him on notice. They defended it. She filed with the Department of Fair Housing. They defended it. So the cases are inopposite. The Baldwin and Irwin cases are very different than this case. This is more analogous to Cervantes, Valenzuela, and Sloan. In those cases, this circuit allowed equitable tolling so that those plaintiffs would have their day in court. And I suggest to you that that's what should happen in this case. Thank you for your time. All right, thank you. Thank you. And the matter will stand submitted.
judges: Graham, Pregerson, Thompson